UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Vincent Camacho,

Petitioner,

vs. REPORT AND RECOMMENDATION

R.L. Stiff, Warden,

Respondent. Civ. No. 00-1045 (JMR/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 9th day of February, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus. See, Title 28 U.S.C. §2241. The Petitioner has appeared pro se, and the Respondent has appeared by Paul A. Murphy, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for Habeas Corpus be denied, with prejudice.

## II. Factual and Procedural History

At the time of the filing of his Petitioner, the Petitioner was serving a 97-month Federal prison term, which was imposed by the United States District Court for the District of Guam on July

(7)

FILED FEB 09 2001
ENTERED
JUDGMENT ENTD
DEPUTY CLERK

15, 1992. The Petitioner was sentenced following a conviction for Possession with Intent to Distribute Methamphetamine, in violation of Title 21 U.S.C. §841(A)(1).[1]

Originally, the Petitioner had a projected release date of November 9, 2001. See, Respondent's Attachment A; Declaration of Deborah Locke, Ex. 2. However, because of the Petitioner's participation in a Residential Drug Treatment Program, he became eligible for early release, under Title 18 U.S.C. §3621(e), on February 26, 1999. Id. The Petitioner completed the Residential Drug Treatment Program on April 26, 2000, and therefore, was released from the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"), and transferred to his home in Guam, where he began the home confinement portion of his sentence on May 3, 2000. See, Respondent's Attachment A; Declaration of Deborah Locke, Exs. 1-2.

Shortly before his release from FCI Waseca, the Petitioner was evaluated in order to determine whether he was eligible to receive a release gratuity, pursuant to Title 18 U.S.C. §3624(e), and Bureau of Prisons Program Statement ("BOP PS") 5873.05, Release Gratuities and Transportation. On April 12, 2000, FCI Waseca Case Management Coordinator Anne Cummins ("Cummins") determined that the

[1]The Petitioner is currently serving the remainder of his sentence on home confinement status. See, Respondent's Attachment A; Declaration of Deborah Locke, Ex. 1.

Petitioner was not eligible for a release gratuity. See, Attachment B, Declaration of Anne L. Cummins. Cummins explains this decision as follows:

> In considering a release gratuity for inmate Camacho, we noted his community resources, a significant amount of money regularly deposited into his inmate account, and a 180-day placement in the CCC/home confinement. Inmate Camacho paid all his financial obligations in July 1995. For the past five years, the petitioner had not saved money for his release, despite being encouraged to do so by the unit team.

Id. at ¶4.[2]

On April 21, 2000, the Petitioner filed his present application for Habeas Corpus relief, under Title 28 U.S.C. §2241. At that time, he was still under home confinement status at his residence in Guam. The Petitioner asks that we grant a Writ of Habeas Corpus that would direct the BOP to find him eligible for a release gratuity in the amount of $500.00, which is the maximum allowable release gratuity permitted under BOP PS 5873.05.

The Respondent contends that the Petition should be summarily dismissed because of the Petitioner's procedural default, arising from his failure to pursue his claims through the BOP's administrative remedy process in a proper, and timely fashion. The Respon-

[2] As noted by the Respondent, in the six months prior to the Petitioner's release, he deposited $1,185.24 into his Commissary Account, including $590.00 in monetary gifts. See, Attachment B, Ex. 1.

dent further contends that, even if the Petition were not dismissed on the grounds of procedural default, it should be dismissed because it was filed in an improper venue and, therefore, this Court is without jurisdiction to consider the Petitioner's request for relief. Finally, the Respondent contends that this Petition should be dismissed on its merits.

Given the Record before us, we recommend that the Petition be dismissed with prejudice.[3]

---

[3]Although we agree with several of the Respondent's arguments for dismissal, because the Petitioner's Petition is clearly without merit, we have chosen to recommend that relief be denied, on that basis. Here, the Respondent seems to argue that District of Guam would be the proper venue for this action to proceed, since that is where the Petitioner is now in home confinement. However, the Petitioner was held by prison officials in this District at the time of the filing of his Petition. Jurisdiction to grant the requested Writ attaches on the initial filing for Habeas Corpus relief, and it is not destroyed by the transfer of the Petitioner, with any accompanying custodial change. See, Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990); Schiselman v. United States Parole Commission, 858 F.2d 1232, 1235 n.3 (7th Cir. 1988); McCoy v. United States Board of Parole, 537 F.2d 962 (8th Cir. 1976); cf., Wilson v. United States Parole Commission, 460 F. Supp. 73 (D. Minn. 1978). Moreover, in our considered view, it would be inconsistent with the interests of justice and judicial economy to transfer this case to the District of Guam at this stage, particularly in light of the Petition's other procedural deficiencies.

Further, the Petitioner's Petition could also be dismissed because of his failure to exhaust his administrative remedies, and because of his failure to request relief under the appropriate statutory provision. However, we decline to recommend a dismissal of this Petition, without prejudice, based upon these procedural deficiencies, only to be revisited by the same issues after the available remedies had been exhausted.

## III. Discussion

A. Did the Respondent's Decision to Deny the Petitioner his Release Gratuity Violate his Constitutional Due Process Rights.

The Petitioner broadly alleges that the Respondent violated his constitutional rights by refusing to grant him a release gratuity in accordance with BOP PS 5873.05, Release Gratuities, Transportation & Clothing. Specifically, the Petitioner argues that he is in financial need of a release gratuity, and that the BOP Regulation requires that he be granted a release gratuity.

1. Standard of Review. "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978). What constitutes a "property interest" -- deserving of constitutional protection -- has been something of a vexing question. Nevertheless, in a pair of companion cases, which were decided in 1972, the Supreme Court took pains to explore the full meaning of a "property" interest that is protected by procedural due process. In Board of Regents v. Roth, 408 U.S. 564 (1971), the plaintiff sued his employer, a State University, claiming that his employer's refusal to renew his one-year term of employment was a denial of a constitutionally

sheltered property interest. In discussing the attributes of such a property interest, the Supreme Court explained:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id. at 577.

In applying these guidelines to the circumstances in Roth, the Court noted that neither the laws governing the plaintiff's employment with the University, nor the terms of his contractual relationship with that employer, provided for a "renewal" of his contract after his existing one-year contract expired. As such, the Court concluded that the plaintiff "did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." Id. at 578 [emphasis in original].

On the same day that Roth was issued, the Supreme Court decided the similar -- but distinctly disparate -- circumstances of Perry v. Sindermann, 408 U.S. 593 (1972). There, the plaintiff was also a nontenured professor at a State Junior College whose one-year contract was not renewed. Unlike its determination in Roth, the Court concluded that the plaintiff had alleged a property interest, deserving of constitutional protection, because his employer had guidelines and "binding understandings" which implicated a right to contract renewal. In reliance upon Roth, the Court restated the attributes of a property interest, which is worthy of constitutional protection, as follows:

> We have made clear in Roth * * *, that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." * * * A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

Id. at 601 [citations omitted].

Notably, "[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Memphis Light, Gas & Water Div. v. Craft, supra at 9; see

also, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1031 (1992)(Roth now the "traditional" approach).

2. Legal Analysis. Necessarily, in evaluating the Petitioner's entitlement to a release gratuity, we must look to BOP Regulations, which purportedly support his claim for such a benefit. Memphis Light, Gas & Water Div. v. Craft, supra at 9. In this evaluatory process, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." Board of Regents v. Roth, supra at 570-71 [emphasis in original]. Given these parameters, we conclude that the Petitioner's interest in a release gratuity does not rise to the level of a "legitimate claim of entitlement" protected by the Due Process Clause. Memphis Light, Gas & Water Div. v. Craft, supra at 9.

Here, we find no "existing rules," no contractual or quasi-contractual guarantees, and no "mutually explicit understandings," which support the Petitioner's claim to a release gratuity.[4]

---

[4]In Roth, the Court summarized the absence of any independent source of a property right status to Roth's request to be rehired, as follows:

> Thus, the terms of [Roth's] appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any

(continued...)

Rather, the plain text of the Regulation, upon which the Petitioner relies in support of his claim, establishes that the Respondent's decision, as to whether to grant a prisoner a release gratuity, is purely discretionary.

As outlined by the Respondent, Title 18 U.S.C. §3624(d) authorizes the BOP to allocate clothing, funds, and transportation to a prisoner upon his or her release. Specifically, Section 3624(d)(2) provides that, "[u]pon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with * * * an amount of money, not more than $500, **determined by the Director to be consistent with the needs of the offender and the public interest, unless the Director determines that the financial position of the offender is such that**

---

[4](...continued)

> state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

Board of Regents v. Roth, supra at 578.

Modifying this summary, in order to substitute the grant of a release gratuity to the Petitioner for Roth's interest in a rehiring, we believe that the foregoing summary has equal application to the Petitioner's release gratuity claim.

**no sum should be furnished** * * *." [emphasis added]. Further, the Purpose and Scope provision of PS 5873.05 states:

> It is the policy of the Bureau of Prisons that an inmate being released to the community will have * * * some funds to use until he or she begins to receive income. Based on the inmate's need and financial resources, **a discretionary gratuity** of up to the amount permitted by the statute may be granted.

[emphasis added].

Contrary to the Petitioner's suggestion, an analysis of the plain text of the regulatory provisions, upon which the Petitioner relies, makes evident that the payment of a release gratuity, to a prisoner upon his release from prison, is subject to the discretion of prison officials.[5] As such, the Petitioner's suggestion, that he had an entitlement to the release gratuity, is untenable. Consequently, having failed to establish a necessary element of his claim -- namely, the existence and deprivation of a property inter-

---

[5]Here, prison officials expressly determined that the Petitioner was not entitled to a release gratuity, because in the six months prior to the Petitioner's release, he deposited $1,185.24 into his Commissary Account, including $590.00 in monetary gifts. See, Attachment B, Ex. 1. In addition, notwithstanding five years to save funds for his eventual release, the Petitioner elected not to do so. As such, prison officials had substantial evidence with which to legitimately exercise their discretion in deciding that the Petitioner was not entitled to a gratuitous award of $500.00 from the Federal Government.

est -- the Petitioner's claim must fail.[6] Therefore, we recommend that the Petitioner's request for Habeas relief be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

---

[6]Nor does the Petitioner's claim present a legally cognizable liberty interest. As the Supreme Court has explained, a prisoner's due process liberty interests are constrained to those incidents which, "while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force * * *, nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 486 (1995). Therefore, while some prison deprivations do serve to create liberty interests, they are confined to those instances "which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), citing Sandin v. Conner, supra at 482-84. Here, there is nothing to suggest that the Petitioner was subjected to an atypical hardship, as the BOP Regulations at issue make clear that not every prisoner is granted a release gratuity. Further, the Petitioner has not alleged that the duration of his sentence was effected, in any way, by the Respondent's decision to deny him a release gratuity.

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 27, 2001**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then thc party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 27, 1999**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.